

# THE ATTORNEY GENERAL
## OF TEXAS

GROVER SELLERS
XXXXXXXXXXON
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Alex Jung
County Attorney
Fredericksburg, Texas

Dear Sir:

Opinion No. 0-5723
Re: Do the facts under consideration
constitute "hunting with firearms,"
under Article 1377 of Vernon's
Annotated Penal Code? And related
questions.

Your request for an opinion has been received by this
department. We quote from your letter as follows:

"I am submitting the following questions, in-
volving the meaning of certain provisions of Art.
1377, Penal Code of Texas, for your opinion:

"The facts are these:

"Defendants, Fiedler, a member of the armed
forces on furlough, and Wahrmund, the son of the
owner of the land adjoining that entered upon and
a member of his family, stand charged with enter-
ing upon the inclosed lands of Ahrens, and <u>hunt-
ing therein with firearms.</u>

"Prosecuting witness was sitting in a tree
in Young's adjoining pasture near the partition
fence between such lands of Ahrens and Wahrmund,
watching for trespassers upon the Ahrens lands.
Fiedler and Wahrmund, the defendants, were seen
by her about one hundred feet from such partition
fence in the Ahrens pasture and coming up near
the tree upon which she was sitting. Each of the
defendants were in possession of a gun, whether
dismantled and the make of which prosecuting wit-
ness did not notice. Defendants say their guns
were dismantled. Defendants asked prosecuting
witness whether or not she had been able to get
her deer, and upon receiving a negative answer,
defendant, Fiedler, jumped over the fence out of
the Ahrens pasture into the Wahrmund pasture, stat-
ing: 'I'll show you I can get one right quick.'

Prosecuting witness had not previously seen the
defendants that day but had heard a shot which
sounded like a 22 rifle about two or three hours
before defendants came up. Defendant-Wahrmund
says, and he is confirmed in this by his said
neighbor Ahrens (the owner of the land entered
upon), that the latter had granted him permission
to hunt in such pasture about two years previous-
ly and that such permission had never been with-
drawn. Hunting rights for the 1943 deer season,
Nov. 16th to Jan. 1st, had been verbally assign-
ed by said Ahrens to Gold, the husband of the
prosecuting witness, and Gold had not been ad-
vised of such permission granted Wahrmund, except-
ing that Ahrens had retained the right for him-
self and members of his family to hunt on such
premises. Gold had similarly acquired the hunt-
ing rights during the two or three previous years.
There was a freshly plowed field on the side of
the Wahrmund-Ahrens partition fence where lay the
Wahrmund lands. Defendants stated that they had
merely crossed the partition fence into the Ahrens
pasture and walked along such fence on the other
side for convenience -- better walking. The own-
er, Ahrens, was agreeable to this.

"Gold paid Ahrens $50. for the hunting rights
for such 1½ Mos. period -- 225 Ac., of Which 130
Ac. is in field. All of the lands concerned are
inclosed as provided by such article.

"Question 1

"Assuming all the foregoing facts to be true,
do they constitute 'hunting with firearms' as con-
templated by said Art. 1377?

"Question 2

"Assuming all such facts to be true, did the
permission granted by Ahrens to Wahrmund about 2
Yrs. before constitute such consent as would be
a defense to a trespassing charge under such Arti-
cle provided all the other elements of the of-
fense had existed?

"Question 3

"Assuming the facts hereinbefore recited to
be true and it be your opinion that the acts of

the defendants (independent of any question of consent) did not constitute 'hunting with fire-arms,' did such acts constitute 'depredating' as contemplated and forbidden under such article?

"Question 4

"The Ahrens land, over all of which the Gold hunting rights extended, being 225 Ac., at 25¢ per Ac. per year, the highest amount chargeable under such Art. 1377 (to be assured of protection against trespassers) would be $56.25. Would the fact of charging $50, for the 1½ Mos. season be fatal as a defense to the trespassing charge, as-suming all other elements of the offense existed?

"。 . . . . ."

Article 1377, Vernon's Annotated Penal Statutes, pro-vides as follows:

"Entering inclosed land to hunt or fish. -- Whoever shall enter upon the inclosed land of another without the consent of the owner, pro-prietor or agent in charge thereof, and therein hunt with firearms or thereon catch or take or attempt to catch or take any fish from any pond, lake, tank or stream, or in any manner depredate upon the same, shall be guilty of a misdemeanor and upon conviction thereof, shall be fined any sum not less than $10.00 nor more than $200.00 and by a forfeiture of his hunting license and the right to hunt in the State of Texas for a period of one year from the date of his convic-tion. By 'inclosed lands' is meant such lands as are in use for agriculture or grazing purposes or for any other purpose, and inclosed by any structure for fencing either of wood or iron or combination thereof, or wood and wire, or partly by water or stream, canyon, brush, rock or rocks, bluffs or island. Proof of ownership or lease may be made by parol testimony. Provided, how-ever, that this Act shall not apply to inclosed lands which are rented or leased for hunting or fishing or camping privileges where the owner, proprietor, or agent in charge or any person for him by any and every means has received or con-tracted to receive more than twenty-five cents per acre per year or any part of a year for such hunting, fishing or camping privileges, or where

more than $4.00 per day per person is charged for
such hunting, fishing or camping privileges. And
provided further this exemption shall exist for a
period of one year from the date of the receipt
of such sum or sums of money.

"Sec. 2. Any person found upon the inclosed
lands of another without the owner's consent
shall be subject to arrest by any peace officer,
and such arrest may be made without warrant of
arrest."

Webster's International defines hunting as "the pursuit
or chase of game or wild animals." It defines firearm as "any
weapon from which a shot is discharged by an explosive as gun-
powder."

We feel that a firearm dismantled is as deadly as one
mantled since the parts could soon be put together. It fol-
lows that we believe one in the pursuit or chase of game with
firearms, though temporarily dismantled, is "hunting with fire-
arms," as contemplated in Article 1377, supra. Whether defend-
ants were or were not in the pursuit or chase of game, whether
they carried firearms, are questions of fact to be determined
by a jury.

We therefore cannot answer your first question.

With regard to your second question, you state defendant
Wahrmund was given permission to hunt on the land involved by
the owner himself, Ahrens. You further state, with both parties
agreed, that this permission though granted two years previous,
had never been withdrawn.

Article 1377, supra, provides, in part, as follows:

"Whoever shall enter upon . . . without the
consent of the owner, proprietor or agent in
charge thereof. . . . ."

This statute requires a want of consent.

If the original consent granted Ahrens was consent to
hunt thereafter (a question of fact) and this was not with-
drawn at the time of the alleged violation, there is no want
of consent and we answer your second question in the affirmative.

Webster's International defines depredate as "to subject
to plunder and pillage; to despoil; to lay waste."

The Penal Code provides that words used therein are to be construed in the sense in which they are understood in common language unless their meaning is specifically defined. See Article 8, Vernon's Annotated Penal Statutes.

You will observe that Article 1377, supra, says: "Whoever shall enter upon and therein hunt . . . or in any manner depredate upon the same, shall . . .." (Emphasis ours) The wording of the statute shows that "depredate" contemplates something more than "entering" or "hunting." In our opinion it refers to a pillaging or laying waste, and we answer your third question in the negative.

With reference to your fourth question, you will observe the Statute, Article 1377, supra, provides:

". . . this Act shall not apply . . . where . . . the owner . . . has received or contracted to receive more than twenty five cents per acre per year or any part of a year for such hunting. . . ." (Emphasis ours)

We believe the situation you describe, in which $50 was paid for hunting rights on 225 acres for $1\frac{1}{2}$ months, does not come within the above provision, making Article 1377 inapplicable, because in your case the statute requires more than 25 cents per acre for "any part of a year," ($1\frac{1}{2}$ months).

Trusting this satisfactorily answers your questions, and with best regards, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By s/Fred C. Chandler
   Fred C. Chandler
   Assistant

By s/Elton M. Hyder, Jr.
   Elton M. Hyder, Jr.

EMH:db:wc

APPROVED MAY 8, 1944
s/Geo. P. Blackburn
(Acting) ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/OS Chairman